John R. Benefiel
Michigan Bar No. P28970
jbenefiel@sbcglobal.net
525 Lewis Street
Birmingham, MI 48009

*Attorney for Plaintiffs*
*Joseph A. Zyskowski and devMarketing, Inc.*
_____/

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Joseph A. Zyskowski, an individual;
DevMarketing, Inc., a Nevada corporation

        Plaintiffs,

V.

SalesTraq, Inc., a Nevada Corporation;
Larry E. Murphy, an individual

        Defendants
_____/

## COMPLAINT

**JURISDICTION**

This Court has jurisdiction under 28 U.S.C. §1338 (a) and 15 USC § 15 and 26, and also under 28 § 1367(a) since so related to Federal question claims presented in this action as to form part of the same case.

    **I.**    **FALSE DESCRIPTION UNDER 15 USC §1125(a)(1)(B)**

1.    Defendant Larry E. Murphy (Murphy) is a resident of Nevada and is an officer of Defendant SalesTraq Inc., (SalesTraq) a Nevada Corporation which is also controlled by Murphy, and which has an office in this district, is engaged in interstate commerce and maintains

1

a website, Salestraq.com offering to the public on a subscription fee basis comprehensive information on new real estate developments in Las Vegas.

2. SalesTraq's website was the only website offering such comprehensive information on new developments in the Las Vegas area until Plaintiffs' introduced a similar website in late 2007 and early 2008.

3. Plaintiffs Joseph A. Zyskowski (Zyskowski) and devMarketing ,Inc. (devMLS) at substantial expense created a new real estate development information source website, devMLS, to offer on a subscription basis to real estate professionals and others, which was an improvement over the SalesTraq website and was intended to successfully compete with the SalesTraq website on quality and price.

4. Plaintiffs' devMLS website initially included active files containing information only on real estate developments then currently being offered for sale by builders or developers, but later added "archive" files containing floor plan drawings and basic information on housing models in developments that were closed out with houses therein no longer being offered for sale by the builders or developers.

5. The active files of Plaintiffs' website were created using information and data independently obtained by Plaintiffs entirely from sources other than SalesTraq's website.

6. The archive files were also independently created by Plaintiffs, but did incorporate floor plan drawings and associated identifying material collected by the Defendants primarily from the builders or developers which created such floor plans.

7. The floor plan information was obtained by the Plaintiffs from the SalesTraq's website after the subscription fee was duly paid to access SalesTraq's website content for a limited time, beginning in September of 2007.

8.      During the time of its access to the SalesTraq website, Plaintiffs carefully examined the SalesTraq website pages to insure that there was no stated restriction as to use of informational content obtained from the SalesTraq website, and found no such stated restriction as to use of information by subscribers to the SalesTraq website.

9.      The results of this investigation and also of consultations with counsel caused Plaintiffs to believe such material collected by the Defendants could be freely used in Plaintiffs' website and some of the floor plans in SalesTraq's website were therefore included in their competing devMLS website but they were arranged and compiled therein solely by the efforts of Plaintiffs and their contractors in being added to their website.

10.     After completion of the final version of the devMLS website, Plaintiffs actively approached real estate personnel and businesses to market their website service in competition with SalesTraq, including many businesses and individuals who subscribed to SalesTraq's website.

11.     On February 11, 2008, Plaintiffs received an email from a Tim Kuptz, an officer of a Las Vegas real estate sales firm, Re/Max Advantage, who was a subscriber to the SalesTraq website, the email from Mr. Kuptz having an attachment which on its face was a forwarded email received by Re/Max Advantage sent by Defendant Larry E. Murphy and SalesTraq to all subscribers of the SalesTraq website, the email and attachment filed herewith as Exhibit A.

12.     The email dated February 11, 2008 was authored and sent out by Defendant Larry E. Murphy acting personally to wrongfully benefit himself and also as an officer of SalesTraq for its own wrongful benefit that email sent to all subscribers of the SalesTraq website, including out-of-state subscribers.

13.     The February 11, 2008 email of Exhibit A contained an advertisement/promotion link at the bottom soliciting business for SalesTraq, and also contained several false statements, including that the Plaintiff Joseph A. Zyskowski "copied virtually every feature" of SalesTraq website", when in fact he did not copy any features from the SalesTraq Website; that he "illegally copied the archived floor plans," implying criminal conduct by Plaintiff Zyskowski;

That the floor plans published in the archive section of the devMLS website infringed SalesTraq copyright in the floor plans when in fact floor plans could be legally and ethically obtained and used for any purpose by any subscriber to the SalesTraq website at that time, and the archive floor plans do not infringe any SalesTraq copyright;

That SalesTraq had at that time initiated litigation against Plaintiff Zyskowski for copyright infringement, trademark violation, and deceptive trade practices when in fact no such action had been filed at that time, and when an action was filed against the Plaintiffs almost nine month as later did not include any claim of trademark infringement or deceptive trade practices;

That the Plaintiff  Joseph A. Zyskowski was guilty of copyright infringement, trademark infringement and deceptive trade practices in offering the devMLS website;

That Mr. Zyskowski was unethical in conducting his business affairs when in fact Plaintiff Joseph A. Zyskowski has conducted that business in a perfectly ethical manner.

14.     The false statements referred to Paragraph 10 were unprivileged and were widely disseminated in commerce by Murphy and SalesTraq among many potential customers of Plaintiffs' which were all existing subscribers to the SalesTraq website by the February 11, 2008 email sent by Murphy and SalesTraq with the malicious intent to injure Plaintiffs, the email containing commercial advertising and promotion which misrepresented the characteristics and qualities of Plaintiffs' devMLS website and services as being unoriginal infringing material and

4

containing illegal copies of floor plans from the SalesTraq website, and therefore violates 15 USC §1125(a)(1)(B).

15. Plaintiffs when soliciting potential customers of their website, were told by many of the potential customers that they would not consider becoming a subscriber to devMLS until the "litigation" they had been led to believe had been initiated by Defendants SalesTraq and Larry E. Murphy was resolved.

16. By their dissemination of false information, Defendants caused potential customers to not subscribe or in some cases to not even consider subscribing to Defendants' devMLS website and instead those potential customers continued to use SalesTraq's website, and therefore the Defendants' action damaged the Plaintiffs by impeding their attempts to sell subscriptions to the devMLS website, and ultimately also causing the loss of Plaintiffs' investment in the devMLS website due to the much reduced subscription sales of the devMLS website.

**II.**                                    **DEFAMATION**

17. The allegations of paragraphs 1-16 are here repeated.

18. The business reputations of Plaintiffs Joseph A. Zyskowski and devMarketing, Inc. have been harmed due to the malicious making of the false and defamatory statement jointly made by SalesTraq and Defendant Larry E. Murphy in his individual capacity in the email of Exhibit A communicated in commerce to a number of potential customers of Plaintiffs, with the intent to damage that business and thereby did damage them in their business by the loss of subscription sales since customers inferred that Plaintiff Zyskowski was unethical and thus someone undesirable to do business with and had committed illegal impliedly criminal and unethical acts, thus causing general damages to the Plaintiffs' reputation and goodwill.

### III.  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

19. The allegations of paragraphs 1-18 are here repeated.

20. Defendants SalesTraq and Larry Murphy jointly and knowingly made the unprivileged, false and defamatory statements as to Plaintiffs' business ethics and the content of their devMLS website with an intent to wrongfully interfere with Plaintiffs attempts to market their devMLS website with prospective customers in the Las Vegas real estate community and elsewhere in order to wrongfully limit competition with the SalesTraq website by creating the false belief that the Plaintiffs' had copied the entire content of SalesTraq's website illegally, that the content was infringed a SalesTraq copyright, that litigation had already ensued and that there was no difference in the capabilities of Plaintiffs' website from the SalesTraq website, and that Plaintiff Joseph Zyskowski had committed criminal and unethical acts in competing with SalesTraq and had also infringed SalesTraq trademarks and copyrights, and engaged in deceptive trade practices and was unethical and thus undesirable to do business with.

21. Prospective customers contacted by Plaintiffs were interested in subscribing to the Plaintiffs' devMLS website but some indicated that they would not consider subscribing until the litigation they believed was then pending was resolved and as a result would not enter into a subscription agreement with Plaintiffs, this resulting from wrongful acts of Defendants SalesTraq and Larry E. Murphy.

22. The wrongful acts of Defendants SalesTraq and Murphy caused loss of business and ultimately to the loss of the investment of the Plaintiffs in the devMLS website due to the resultant failure to obtain sufficient subscriptions to successfully continue the business.

### IV.  ATTEMPT TO MONOPOLIZE UNDER 15 USC §2

23.     Paragraphs 1-22 are here repeated.

24.     Defendant SalesTraq had maintained a monopoly over a website information service which provides comprehensive information in the Las Vegas new real estate development market until Plaintiffs' website was introduced in late 2007 and early 2008.

25.     The availability of such new development information website service affects the Las Vegas real estate market which in turn has an effect on interstate commerce.

26.     Defendants SalesTraq and Murphy have aided and assisted in the filing and prosecution of a civil action in the name of SalesTraq America, LLC a Nevada Limited Liability company controlled by Murphy, to prevent Plaintiffs' use of the floor plans which were created by third parties, and the claim of infringement of property rights in the builders' floor plans is baseless and brought to eliminate competition with SalesTraq, since access to such floor plans is important to offer in order to effectively compete in this business, and since potential customers would avoid purchases of the devMLS if the floor plans on the devMLS website archive files were believed to infringe a copyright and if litigation was pending concerning the legality of the devMLS website.

27.     Defendants have given wide circulation in commerce to unprivileged false statements including to persons in other states, falsely accusing Plaintiffs of illegally using the floor plans in its devMLS website and to the existence of this litigation at a time almost 8 months before any litigation was instituted, and when instituted did not include any claim of trademark infringement or deceptive trade practices.

28.     Defendants have demanded in writing and also verbally through Murphy's attorneys that Plaintiff submit to onerous terms in order to resolve this litigation that go far beyond ceasing use of the floor plans, requiring *inter alia* publication in a trade magazine of an admission of alleged

wrongful behavior which did not take place Plaintiffs, and transfer of all rights in the Plaintiffs' website to SalesTraq.  In a proposed written settlement agreement it was required that:

> 3.1 Dev [Plaintiff devMLS] shall cease anywhere in the world and in perpetuity the conduct, whether directly or indirectly, of any business activity of any nature whatsoever on or before November 1, 2008 (the "Termination Date").
>
> 3.2 On or before the Termination Date, Defendants [Plaintiff] shall cease anywhere in the world and in perpetuity the conduct, whether directly or indirectly, of any business activity in or related to the real estate industry (whether residential or commercial), including, without limitation, any activity in any manner Exploiting any of the intangible assets (including, without limitation, any Intellectual Property) owned or licensed by either or both of the Defendants (or claimed to be owned or licensed by either or both of the Defendants) as well as any activity in any manner similar in or competitive with the business currently conducted by Plaintiff which is in part represented by the depiction of business set forth in Exhibit A, a current printout of Plaintiff's website (the "Competitive Business").
>
> 5. On or before the Return Date, Defendant shall instruct {hosting company} (the "Hosting Company") to preserve in Media inaccessible to any Person other than the personnel of the Hosting Company, and in particular, not accessible through the Internet, any intranet or other network of whatsoever nature, all Content in existence as of the Effective date that either or both of the Defendants ever used, held, possessed or Controlled in any manner intrinsic to, related to or arising from Dev's business and/or any Competitive Business.
>
> 7.1 No later than the Termination Date, Defendants shall provide to Plaintiff: (a) a list (the "Customer List") of all Dev Customers, in both the electronic format in which such Customer List originally existed and in print form; (b) copies of all Contracts between Dev and one or more Dev Customers into which Dev entered at any time, in both the electronic format in which such Contracts originally existed and in print form (the "Contract copies"); and (c) a list (the "Contact List"). In both electronic and print formats, of all Contacts with Dev Contracts with Dev Customers under which list shall include, with respect to each identified Contract,

        the date on which Dev's obligation to provide services shall cease.

7.2    On or before the Return Date, Defendants shall use Defendants' best efforts to send correspondence to each Dev Customer (the "Referral Correspondence"), in form and substance the same as exhibit C. The Referral correspondence shall make no reference to any service provider of any nature other than Plaintiff. Defendants shall Certify no later than the Certification Date that Defendants have made Defendants' best efforts to send Referral Correspondence to each Dev Customer (the "Referral certification"). Defendants shall send further correspondence to each Dev customer (the "Follow-up Correspondence"), in a form substantially similar to Exhibit ??? hereto, no later than Friday, November 21, 2008, and Defendants shall certify no later than Friday, November 28, 2008 that Defendants have made Defendants' best efforts to send Follow-Up Correspondence to each Dev Customer (the "Follow-Up Certification"). The entry of any Dev Customer into a Contract with Plaintiff at any time shall result in a novation of such Dev Customer's Contract with Dev and Plaintiff shall assume Dev's obligations of provision of real estate-related information thereunder.

7.3    Defendants shall refer to Plaintiff, at the address and telephone number provided in Section ### below, all prospective Customers of dev that first initiate contact with Dev on or after the Termination Date.

7.4    Defendants shall generally use Defendants' respective best efforts to fully cooperate with Plaintiff in Plaintiff's efforts to transition all dev Customers to become or rejoin Plaintiff as a customer of Plaintiff.

8.    No later than Monday, November 10, 2008, Defendants shall: (a) cause to be transferred to Plaintiff (the "Domain Name"); (b) cause all Content reposed on the devMLS.com Website (the "Website") to be held in escrow with the company hosting the Website (the "Escrow Placement"); and (c) cause all e-mail messages directed to any address at the dev.MLS.com domain to be forwarded to Plaintiff (the "Forwarding"), at an e-mail address to be provided to Defendants no later than the Termination Date. No later than Friday, November 14, 2008, Defendants shall Certify to Plaintiff that the Domain Transfer, the Escrow Placement,

>    and the Forwarding have been accomplished (the "Online Certification").
>
>    14.   Defendants covenant that neither of the Defendants, nor any Person acting under the control of either Defendant, shall engage in any business activity related to the provision of information regarding residential or commercial real estate, in any state in which Plaintiff, or any subsidiary of Plaintiff, does business at that time or in any state bordering any state in which Plaintiff, or any subsidiary of Plaintiff, does business at the time (the "Non-Competition Agreement"). It shall be the sole responsibility of Defendants to ascertain in what states Plaintiff and Plaintiff's subsidiaries are doing business at any given time. That Non-Competition Agreement shall terminate on the tenth (10th) anniversary of the Effective Date.

29.   These actions indicate that Murphy and SalesTraq jointly intend to wrongfully attempt to monopolize the market for providing access to new development information via the internet or by other electronic means in the Las Vegas market and elsewhere forbidden by 15 USC §2 and have thereby harmed Plaintiffs' attempt to provide a competitive service.

### V.   Unfair Competition

30.   Paragraphs 1-29 are here repeated.

31.   Defendant SalesTraq is a competitor of Plaintiffs in the business of providing real estate development housing information disseminated electronically by the internet.

32.   Defendant SalesTraq and Defendant Murphy acting both for his personal gain and as an officer of SalesTraq for the benefit of SalesTraq jointly acted to unfairly damage the competitiveness of the Plaintiffs' devMLS website by making with malice false and defamatory unprivileged statements to all of the subscribers of the SalesTraq website as set out in the allegations set out above.

33.   Defendants SalesTraq and Murphy jointly with SalesTraq and SalesTraq America LLC a limited liability company controlled by Defendant Murphy brought a baseless action seeking to prevent use of floor plans obtained from the SalesTraq website and with the purpose and intent

of discouraging subscription sales of the Plaintiffs' website devMLS, by the deterring effect such litigation would have on potential subscribers to Plaintiffs' devMLS website, and to force Plaintiffs to sustain the expense and distraction of defending such litigation.

34.     Plaintiffs have expended time and expenses in defending such litigation and have been prevented from succeeding with their devMLS website subscription business due to the affect on potential subscribers to the devMLS website and thereby effectively lost the benefit of the Plaintiffs' investments made in the devMLS website.

## VI.     Civil Conspiracy

35.     Paragraphs 1-34 are repeated.

36.     Defendant Murphy acting for his own benefit conspired with Defendant SalesTraq for its own benefit to defame Plaintiffs in order to impair Plaintiffs ability to compete with the SalesTraq website, and did thereby damage Plaintiffs' ability to compete with the SalesTraq website.

37.     Defendants Murphy acting in his individual capacity and SalesTraq and SalesTraq America LLC have knowingly acted in concert to interfere with Plaintiffs ability to sell subscriptions to their website devMLS.

38.     These concerted actions included Murphy's sending of the defamatory email of Exhibit A to all of the subscribers of SalesTraq's website, by knowingly making false statements concerning the legal right of Plaintiffs to use the floor plans obtained from the SalesTraq website, and that the floor plans in the devMLS archive files infringe a SalesTraq copyright.

39.     These concerted actions have further included the filing of a baseless civil action claiming that the use of floor plans obtained by Plaintiffs constituted copyright infringement in an effort to force Plaintiffs to expend resources to defend the same, and to influence potential

subscribers to not subscribe due to the possible legal complications raised by the fact of such litigation.

40.     Plaintiffs have been damaged by the loss of potential customers who did not purchase a subscription because of the effects of the disparaging statements and the pending civil action filed against the Plaintiffs.

## Relief Requested

Plaintiffs request that this Court:

A.      Award Plaintiffs their damages resulting from making without privilege the false descriptions of its website content which were maliciously disseminated to third parties by the Defendants SalesTraq and Larry E. Murphy.

B.      Award damages to Plaintiffs resulting from Defendant SalesTraq's and Larry E. Murphy's wrongful interference with their prospective economic advantage.

C.      Award each Plaintiff general damages for the defamation as to each of their business ethics reputation resulting from the defamatory statements made and published jointly by Defendants.

D.      Issue an injunction against the making or dissemination of any false statements concerning Plaintiffs' devMLS website, or concerning business ethics of either of the Plaintiffs, or the nature and quality of the content of the devMLS website and publishing a retraction of the false statements jointly made by the Defendants.

E.      Award treble damages under Title 15 USC §15 suffered by Plaintiffs from the attempted wrongful monopolization by Defendants of the business of providing electronic new development housing information, as well as Plaintiffs' costs and attorney fees.

F.   And, that Plaintiffs have judgment on all of their claims against Larry E. Murphy, personally and SalesTraq and an award of Plaintiffs' reasonable attorneys' fees and costs and such other relief that this Court deems just.

Dated:  January 15, 2010                    /s/John R. Benefiel          .
                                            John R. Benefiel (P28970)
                                            Attorney for Defendant
                                            525 Lewis Street
                                            Birmingham, Michigan 48009
                                            (248) 644-1455
                                             jbenefiel@sbcglobal.net

## JURY DEMAND

Defendants demand a trial by Jury of all issues so triable raised in this Action.

Dated:  January 15, 2010                    /s/John R. Benefiel          .
                                            John R. Benefiel (P28970)
                                            Attorney for Defendant
                                            525 Lewis Street
                                            Birmingham, Michigan 48009
                                            (248) 644-1455
                                             jbenefiel@sbcglobal.net